Thomas C. TERRY, Dan Fields, Jim Crowe, Keith Barker, James A. Richards, Don Wright, David L. Giltz, Dale Bishop, Tony Baity, James R. Davis, Don Britt, Lonnie Davis, Jim Wilson, David C. King, Donald E. Henderson, Arthur Jarrell, Ron Ray, J.C. Greer, Gary Peebles, Harold Dyson, Ed Strange, Sam E. Callahan, George C. Blankenship, Jr., Paul Embry, Clayton Worley, John R. Marshal, and Robert C. Munsey, Plaintiffs,

v.

CHAUFFEURS, TEAMSTERS AND HELPERS, LOCAL 391; and McLean Trucking Company, Inc., Defendants.

Civ. No. C–83–693–WS.

United States District Court, M.D. North Carolina, Winston–Salem Division.

Nov. 10, 1987.

Ellen R. Gelbin, Robert M. Elliot, Winston–Salem, N.C., for plaintiffs.

J. David James, Greensboro, N.C., for defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiffs, present and former members of Local 391, International Brotherhood of Chauffeurs, Teamsters, Warehousemen and Helpers of America, and former employees of McLean Trucking Company, Inc., have brought this action pursuant to

Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, alleging breach of the collective bargaining agreement against McLean Trucking Company and breach of the duty of fair representation against the International Brotherhood of Teamsters of America and Local 391. Plaintiffs also allege that all Defendants were involved in a conspiracy to violate Plaintiffs' rights under the collective bargaining agreement. Plaintiffs seek declaratory and injunctive relief, compensatory damages, attorney's fees, and costs. Plaintiffs also demand a jury trial.

The court granted summary judgment in favor of the International Brotherhood of Teamsters of America, and this proceeding was stayed with respect to McLean Trucking Company upon McLean's filing of a petition in bankruptcy. Presently pending before the court is a motion to strike the Plaintiffs' jury demand filed by the remaining Defendant, Local 391.

The parties have submitted briefs and the court heard oral argument in conjunction with the final pre-trial conference on September 30, 1987.

This matter presents a close question concerning whether Plaintiffs are entitled to a jury trial for a Section 301/breach of duty of fair representation claim. The case law which has confronted the question directly is split, and some of the rationale for granting a jury trial may have been altered by the United States Supreme Court's determination in *United Parcel Service v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), and *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), that such suits are not analogous to common law contract or tort actions.

Few circuit courts since the Supreme Court's rulings in *Mitchell* and *DelCostello*

have approached the jury issue in fair representation actions, and the one which most closely addressed the issue ruled in favor of a jury. *Quinn v. DiGiulian*, 739 F.2d 637 (D.C.Cir.1984).[1] The district court cases since 1983 are sharply divided, however, with some construing the Supreme Court decisions broadly and others following the narrower construction in *Quinn*. For the reasons set forth below, the court finds the latter position more persuasive, and therefore denies Defendant's motion to strike Plaintiffs' jury demand.

■■■ Defendant correctly points out that Section 301 does not provide an independent statutory right to a jury trial. The very general language of Section 301 merely grants jurisdiction in federal courts. Defendant also contends, however, that Plaintiffs' Section 301 claim is not an action "at common law" within the meaning of the seventh amendment[2] and therefore Plaintiffs are not entitled to a trial by jury. In support of this contention, Defendant notes the distinction drawn by the United States Supreme Court in *Mitchell* and *DelCostello* between "hybrid" Section 301 claims and their common law components. In *DelCostello*, the Court reasoned that because the plaintiff in a Section 301/fair representation suit must demonstrate both the employer's contract violation and the union's breach of duty to prevail against either party, the two underlying claims are "inextricably interdependent." 462 U.S. at 164–65, 103 S.Ct. at 2290–91 (citing *Mitchell*, 451 U.S. at 66–67, 101 S.Ct. at 1565–66 [Stewart, J., concurring in judgment], quoting *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 [1976]). Consequently the hybrid cause of action is not equivalent to the standard common law contract or tort claim, but is a product of labor law which was not recognized at common law.[3] The

---

1. The Ninth Circuit also recently allowed a jury to resolve the question of liability in a hybrid Section 301 action where the claimants sought back compensation for sick leave. *Zuniga v. United Can Co.*, 812 F.2d 443 (9th Cir.1987).

2. The seventh amendment provides in part: "In Suits at common law, where the value in controversy shall exceed $20.00, the right of trial by

jury shall be preserved...." U.S. Const. amend. 7.

3. Defendant contends that the weight of authority of lower court cases prior to *Mitchell* was against the right to a jury trial. *See Nedd v. Thomas*, 316 F.Supp. 74 (M.D.Pa.1970), *aff'd on other grounds*, 556 F.2d 190 (3d Cir.1977), *cert. denied*, *United Mine Workers v. Nedd*, 434 U.S.

Supreme Court's conclusion does not preclude applicability of the seventh amendment to such actions, however. The Court has clearly stated in other decisions that the seventh amendment embraces not only those causes of action which the common law recognized, but all suits "in which legal rights were to be ascertained or determined." *Ross v. Bernhard*, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970). The question is not whether the rights existed at common law or were created by statute, for it is well established that the seventh amendment "requires a jury trial upon demand" where a statute "creates legal rights and remedies, enforceable for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974). Rather, the question is whether the rights Plaintiffs assert in their hybrid Section 301 action are legal or equitable.[4]

On this point the Supreme Court's observation in *DelCostello* is not dispositive. In *Ross* the Court mentioned three factors for determining the legal nature of an issue, and the "pre-merger custom with reference to such questions" is only the first of these. 396 U.S. at 538 n. 10, 90 S.Ct. at 738

n. 10. Moreover, *DelCostello* merely implies that the common law did not speak to hybrid Section 301 claims, and does not say that they are equitable.[5] Whether a claim is legal or equitable for seventh amendment purposes depends also on "the remedy sought; and ... the practical abilities and limitations of juries," *Ross*, 396 U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10, and in fact the Court has previously implied that the type of remedies involved is more important than whether the cause of action had a common law counterpart. *Curtis*, 415 U.S. at 195–96, 94 S.Ct. at 1009; *see also Quinn v. DiGiulian*, 739 F.2d at 646; *Kinzel v. Allied Supermarkets, Inc.*, 88 F.R.D. at 362.

In addition to requesting reinstatement and other injunctive relief Plaintiffs seek punitive damages and other monetary relief for lost wages and health benefits and for mental and emotional distress. Because McLean has ceased operation and is not presently before this court, injunctive relief in the form of reinstatement is no longer possible. The current law also indicates that Plaintiffs' punitive damage claim may not lie against Local 391, *Peterson v. Air Line Pilots Assn., International*, 759

---

1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978); *Brady v. Trans World Airlines, Inc.*, 196 F.Supp. 504 (D.Del.1961), *aff'd on other grounds*, 401 F.2d 87 (3d Cir.1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 681, 21 L.Ed.2d 691 (1969). Defendant further argues that *Mitchell* and *DelCostello* swing the balance more in its favor by effectively overruling the prior cases which granted a jury trial. This overstates the significance of the Supreme Court rulings, however, because although the prior cases treated hybrid Section 301 claims like common law contract and tort actions they also took into account the type of remedies involved and the abilities of the jury in deciding that the seventh amendment applied. *See Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138 (5th Cir.1979); *Minnis v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 531 F.2d 850, 852–53 (8th Cir.1975); *Kinzel v. Allied Supermarkets, Inc.*, 88 F.R.D. 360, 362–64 (E.D. Mich.1980).

The court also notes at the outset that although the Fourth Circuit has not addressed this issue directly it has permitted a jury trial as to the damage issue in an action against a union under the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq., Simmons v. Avisco, Local 713, Textile Workers of America,*

350 F.2d 1012 (1965). The Fourth Circuit also tacitly acknowledged the right to jury trial in a fair representation action against a union. *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888 (4th Cir.1980). The court granted defendant's judgment n.o.v. and new trial motions after the jury awarded plaintiff monetary damages but the court did not question the legality or propriety of the jury trial.

**4.** Plaintiffs' claim asserts a right created by statute. Although the duty of fair representation is not expressly included in the federal labor laws, the Supreme Court has found it to be an implicit obligation of exclusive bargaining representatives under both the Railway Labor Act, *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 202, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944), and the National Labor Relations Act, *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953); *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964). The Supreme Court also authorized its enforcement in the federal courts in *Vaca v. Sipes*, 386 U.S. 171, 188, 87 S.Ct. 903, 915, 17 L.Ed.2d 842 (1957).

**5.** Defendant's contention to the contrary will be considered shortly herein.

F.2d 1161, 1167 (4th Cir.1985); *see also International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 49–52, 99 S.Ct. 2121, 2126–27, 60 L.Ed.2d 698 (1979) (Railway Labor Act); *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton,* 377 U.S. 252, 260–61, 84 S.Ct. 1253, 1258–59, 12 L.Ed.2d 280 (1964) (NLRA § 303[a]).

The law is not clear as to whether lost wages constitute legal or equitable relief in Section 301 claims. The Supreme Court has recognized the inappropriateness of jury trials in Title VII actions, acknowledging circuit court decisions which denied jury trials where claimants sought reinstatement and back pay. *See Great American Federal Savings and Loan Ass'n v. Novotny,* 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979) (citing *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 [5th Cir.1969]) (treating back pay as part of the statutory equitable remedy); *Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981). This position is based in large part on the language of Title VII, 42 U.S.C. § 2000e–5(g), which "expressly authorizes only equitable remedies," *Novotny,* 442 U.S. at 375, 99 S.Ct. at 2350, *see also Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978), and which leaves the awarding of back pay to the equitable discretion of the trial court. *Lorillard v. Pons,* 434 U.S. at 584, 98 S.Ct. at 872 (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 [1975]). In order to fashion appropriate relief within the constraints of Title VII, the Court has found back pay to be a "make-whole" remedy, not outside of equity. *Albemarle,* 422 U.S. at 419–21, 95 S.Ct. at 2372–73. *See also Robinson v. Lorillard,* 444 F.2d 791, 802 (4th Cir.), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971).

Courts have treated actions under other statutes differently, however. In *Lorillard v. Pons* the Supreme Court distinguished the limiting language of Title VII from the broader remedial provisions of the Age Discrimination in Employment Act ("ADEA") which expressly permit recovery of "legal or equitable" relief. 29 U.S.C. § 626(b), (c). The Court further reasoned that since the ADEA also incorporates the procedural aspects of the Fair Labor Standards Act ("FLSA"), and since Congress must have known that the FLSA has been interpreted to include jury trials, by providing for legal relief Congress must have intended to extend the right to a jury to ADEA actions. *Id.,* 434 U.S. at 582–83, 98 S.Ct. at 871.

In addition, the Court observed that although the ADEA does not specify which types of relief are legal or equitable, since "employment, reinstatement or promotion are equitable ... 'legal relief' must refer to" "unpaid minimum wages or unpaid overtime compensation" within the meaning of the FLSA. *Lorillard v. Pons,* 434 U.S. at 583 n. 11, 98 S.Ct. at 871 n. 11. Since lost wages are the ADEA equivalent of unpaid minimum wages or unpaid overtime compensation, *Pons v. Lorillard,* 549 F.2d 950, 953 (4th Cir.1977), *aff'd, Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), the Supreme Court essentially agreed with the Fourth Circuit's ruling that for ADEA purposes lost wages, *e.g.,* back pay, is traditional legal relief.

The status of lost wages under Section 301 is not as clear. Section 301 does not mention forms of relief, other than to say that monetary damages cannot be recovered against individual union members. 29 U.S.C. § 185(b). However, although Congress did not expressly provide for legal or equitable relief, legal relief has been granted in the past in the form of punitive damages against the employer or damages resulting from the wrongful conduct. Therefore Section 301 does not limit recovery to equitable remedies.

None of the circuit courts have directly confronted the question whether lost wages are equitable or legal in actions broughts under Section 301. However, two circuit courts have apparently treated them as traditional legal remedies. *Cox v. C.H. Masland & Sons, Inc.,* 607 F.2d at 142; *Minnis v. International Union, etc.,* 531 F.2d at 852. Each of those cases involved discharged plaintiffs, and both ruled in favor of a jury trial for plaintiffs' hybrid

Section 301 claims. Neither court specified the relief sought but since the actions were for wrongful discharge it seems likely that the monetary damages sought at least partly represented wages lost as a result of the employer's actions.

This is supported by the Fifth Circuit's statement in *Cox* that plaintiff "seeks only monetary damages from each defendant, not arbitration or judicially-decreed reinstatement, remedies equitable in nature because they are in effect specific performance." 607 F.2d at 142. The court did not mention back pay or lost wages among the "remedies equitable in nature," nor is back pay a type of specific performance. Back pay represents wages plaintiff was deprived of the opportunity to earn, not money he actually worked for that was withheld from him. Therefore the monetary recompense the Fifth Circuit called "the traditional common law remedy" probably included lost wages.

Similarly, in *Minnis* the plaintiff sought "a traditional legal remedy—compensatory and punitive damages." 531 F.2d at 852. Again in a discharge suit the plaintiff is unlikely to seek solely compensatory damages other than the back pay he was prevented from earning.

Even if the rulings in *Cox* and *Minnis* in favor of jury trials are called into question in light of *Mitchell* and *DelCostello*, because the former were based in part on treating the claims like common law contract or tort actions, the courts' classification of remedies has not been contravened. Absent contrary precedent regarding Section 301 and in light of both the availability of other legal relief under that section and the varying treatment of back pay under other sections in the past, the court is persuaded that classification as legal relief is proper.[6]

Plaintiffs also seek reimbursement for medical expenses incurred at a time when, but for the union's alleged breach, they would have been employed, and McLean's health plan would have covered the cost.

Such claims are comparable to lost wages, and are entitled to the same treatment.

Finally, Plaintiffs seek damages for mental and emotional distress, which is clearly legal relief. Therefore this action differs from those in which courts have denied jury requests because plaintiff sought only equitable relief. *See, e.g., Griffin v. United States Postal Service*, 635 F.Supp. 190, 193 (N.D.Ga.1986); *Spicuzza v. Ace Hardware Corp.*, No. C 82–1 (N.D. Ohio Jan. 15, 1986).

In the alternative, Defendant also argues that the Supreme Court has treated Section 301/fair representation suits as predominantly equitable. Defendant refers to statements in both *DelCostello* and *Mitchell* that these suits are more analogous to actions to vacate arbitration decisions than they are to straight contract claims seeking damages. *Mitchell*, 451 U.S. at 62, 101 S.Ct. at 1563; *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291. Defendant uses the Supreme Court's stated rationale, that the first step in Plaintiffs' claim involves the challenge to the finality of the arbitration ruling, to conclude that even if Plaintiffs state a claim for legal relief, that claim is secondary and incidental to the equitable relief of over-turning a prior decision.

Defendant also cites to the court two district court cases decided since *DelCostello* which rely on such reasoning in granting the defendant's motion to strike plaintiffs' jury demand. *Spicher v. Wilson Foods Corp.*, No. 85–1203, slip op. at 6 (C.D.Ill. Nov. 27, 1985) [Available on WESTLAW, 1985 WL 6291]; *Harris v. Refiner's Transp. & Terminal Corp.*, No. C 84–7578, slip op. at 14 (N.D. Ohio Apr. 8, 1985). These cases conclude that "[b]ecause plaintiff is entitled to no relief unless the finality accorded the grievance process is set aside, the monetary request is ... merely incidental to the primary relief sought." *Harris, supra*, at 14; *see also Spicher, supra*, at 6.

These cases overstate the Supreme Court's position. Both *Mitchell* and *Del-*

---

**6.** Where the issue is unclear it should be resolved in favor of constitutionally protected rights.

*Costello* involved the proper statute of limitations for filing a Section 301/fair representation claim. The Court first decided in *Mitchell* that insofar as the plaintiff's suit challenged the prior arbitration decision the three-month limitations period applicable to appeal of arbitration awards under state law was more appropriate than the six-year statute of limitations applicable to standard contract actions. 451 U.S. at 64, 101 S.Ct. at 1565. Then, in *DelCostello*, the Court held that neither option was suitable for Section 301/fair representation claims. Although such actions are more similar to challenges of commercial arbitration awards than to simple contract claims, the fact that the employee-plaintiffs are removed from the arbitration process requires that they be given more time after the award to vindicate their rights, 462 U.S. at 165–66, 103 S.Ct. at 2291.[7]

The Supreme Court's concern in both cases was the finality of arbitration decisions, not the applicability of the seventh amendment. The issue the Court faced was whether to allow a plaintiff to challenge the arbitration decision, not whether such challenge can be made before a jury. In the present case Plaintiffs filed this suit within the appropriate limitations period and their claims will be heard. The only question currently before this court is whether Plaintiffs are entitled to make their arguments to a jury, and on this point the Supreme Court has not spoken.

At least one circuit court agrees with this analysis. In *Quinn v. DiGiulian, supra,* the Circuit Court of Appeals for the

District of Columbia Circuit said that the *DelCostello* holding regarding statutes of limitations "offers little support for the ... argument that [a fair representation] action is equitable in nature for seventh amendment purposes." 739 F.2d at 646.[8]

Interestingly, Judge Contie's concurrence in *Wood v. Teamsters Local 406*, to which Defendant refers the court, also comments that *Mitchell* and *DelCostello* do not apply directly to the jury question in hybrid Section 301 claims. 807 F.2d 493, 505, n. 1 (6th Cir. Dec. 15, 1986) (Contie, J., concurring). Judge Contie also contends that the underlying contract claim is triable to a jury, but the breach of duty of fair representation claim is not because it amounts to an attempt to set aside the arbitration process. Therefore, the fair representation claim should be heard by the court before empanelling a jury. *Id.* In so arguing, Judge Contie essentially disregards the Court's holdings in *DelCostello* and *Mitchell,* with respect to treating the underlying claims as interdependent, and his position is inconsistent with Defendant's contentions. Further, since the other two judges in *Wood* did not reach the jury issue, *id.* at 504, n. 3, the case provides no support for the Defendant's position.

This court in any event rejects the argument that Plaintiffs' damage claims against the union are incidental to the equitable objective of setting aside the arbitration decision. Plaintiffs' goal is not to overturn the Joint Bi–State Grievance Committee's arbitration ruling, and in light of McLean's present condition they certainly

---

**7.** The *DelCostello* Court adopted the six-month period applicable to unfair labor practice actions brought before the National Labor Relations Board. While the Court considered fair representation actions to be closely related to unfair labor practice actions for this purpose, the Court expressly refrained from holding that they are equivalent. 462 U.S. at 170, 103 S.Ct. at 2293. Defendant's contention that, because unfair labor practice claims are not tried to a jury, the Plaintiffs' claim should not be, is unpersuasive.

**8.** The court in *Quinn* went on to find that plaintiff's "action for damages for breach of the duty of fair representation is an action to enforce a legal right, and the plaintiff is entitled to a jury trial of that action." 739 F.2d at 646. *Quinn*

involved only a fair representation claim, and not a hybrid Section 301, but two district courts have applied the holding in *Quinn* to a hybrid in ruling in favor of a jury trial. *Cook v. National Maritime Union of America,* 617 F.Supp. 1052 (S.D.N.Y.1985); *Emerick v. McConway & Torley Corp.,* 650 F.Supp. 545 (E.D.Pa.1986); *see also Grider v. Monin,* 637 F.Supp. 324 (M.D.Tenn. 1986). The court finds the *Quinn* reasoning more convincing than the arguments in the cases offered by Defendant. *Compare Spicuzza v. Ace Hardware Corp.,* No. C 82–1 (N.D. Ohio Jan. 15, 1986); *Hampton v. Robertshaw Controls Co.,* Civ. 3–87–002 (E.D.Tenn. Apr. 23, 1987); *McIntyre v. United Steelworkers of America,* No. 85–258–Civ–3–16 (M.D.Fla. July 31, 1985).

do not want another crack at arbitration. What Plaintiffs do want now is money to replace what they believe they lost because of the wrongdoing of their employer and their union, Local 391. Although to prevail Plaintiffs need to prove both the breach of contract and Local 391's breach of duty, if they do in fact recover against the union it will be because Local 391 violated its duty, and not because the arbitration committee ruled incorrectly. Just as if the committee decided properly that McLean did not breach the contract, Local 391 would not be liable regardless of its conduct during the hearing, so also is Local 391 not liable regardless of the correctness of the arbitration ruling if the union represented the Plaintiffs fairly. *See Bygott v. Leaseway Transp. Corp.*, 56 U.S.L.W. 2038 (3d Cir. June 25, 1987). Thus Plaintiffs' claim against the union for damages attributable to the breach of duty is no more incidental than their challenge of the arbitration committee's decision that McLean had not violated the agreement.

Moreover, even if the legal remedies sought were classified as "incidental" to the equitable relief, the Plaintiffs would still be entitled to a jury determination of their legal claims. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962), citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504, 510, 79 S.Ct. 948, 953, 956, 3 L.Ed.2d 988 (1959); *Curtis*, 415 U.S. at 196 n. 11, 94 S.Ct. at 1009 n. 11; *Ross*, 396 U.S. at 536–37, 90 S.Ct. at 737.

Insofar as Plaintiffs' claim for lost wages and medical expenses constitute pleas for legal relief, and in light of Plaintiffs' mental and emotional distress claims, the second *Ross* standard counsels in favor of a jury trial of those issues.

Finally, although the practical abilities and limitations of a jury may be tested in this case, none of the courts which have commented on the third *Ross* standard have found the jury incapable of handling the suit, including all of the cases offered by Defendant. *See, e.g., Spicher, supra,* slip op. at 7; *Kinzel*, 88 F.R.D. at 364. The courts in both *Curtis* and *Quinn* have not-

ed the possibility of jury prejudice, however, and suggest that trial courts bear in mind their authority to grant directed verdicts and judgments notwithstanding the verdict. *Curtis*, 415 U.S. at 198, 94 S.Ct. at 1010; *Quinn*, 739 F.2d at 646.

Because Plaintiffs assert legal rights and seek legal remedies the seventh amendment grants them the right to a jury trial and Defendant's motion is denied.

In order to make the case more manageable for the jury, the court will bifurcate the action. Trial will proceed before the jury on the liability issue first, and if Defendant is found liable the court will then hold a separate trial on the issue of damages. Plaintiffs are entitled to have the same jury hear both the liability and damage issues.

An order consistent with this opinion will be filed contemporaneously herewith.

## ORDER

For the reasons expressed in the opinion filed contemporaneously herewith, the Defendant's motion to strike Plaintiffs' jury demand is DENIED.

Defendant's motion concerns a controlling question of law about which there is ground for difference of opinion; therefore because the issue is critical to the continuation of the pending litigation the court certifies this order for interlocutory appeal under 28 U.S.C. § 1292(b).

Separate trials shall be held on the issues of liability and damages as authorized under Federal Rule of Civil Procedure 42(b).